IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Wachovia Bank, National Association, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:09-cv-03571-JOF |
| ASF Enterprises, LLC, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**OPINION & ORDER**

This matter is before the court on Wachovia Bank, N.A.'s motion to dismiss Defendants' counterclaims [10].

**I.  Background**

   **A.  Complaint and Counterclaim**

Plaintiff, Wachovia Bank, National Association, filed suit against Defendants ASF Enterprises, LLC, Dr. Adegboyega O. Aderibigbe, Dr. Francis K. Acquah, and Dr. Samuel C. Obiorah, on December 18, 2009, to recover two million dollars under various promissory notes, loan documents, swap agreements, and personal guaranties. Defendants filed a counterclaim against Wachovia for $2,145,182.88 alleging that Plaintiff was required to foreclose on the collateral prior to filing suit on the Promissory Note at issue and seeking

an injunction preventing Plaintiff from suing on the Note until after Plaintiff initiated foreclosure proceedings.

As alleged in the Amended Complaint, in October 2006, Plaintiff loaned certain amounts to ASF in connection with the development of property located in Henry County, Georgia. *See* Am. Cmplt., ¶ 10. ASF executed a Promissory Note in the principal amount of $1,840,000 with a maturity date of October 20, 2011. *Id.*, ¶ 11. The terms of the Note provided that ASF would pay Wachovia's "reasonable expenses actually incurred to enforce or collect" the obligations, including attorney's fees. *Id.*, ¶ 12. ASF also executed certain loan documents. ¶¶ 10, 11.

Aderidigbe, Acquah, and Obiorah each executed an Unconditional Guaranty agreement on October 20, 2006, by which they each agreed to guarantee payment to Plaintiff of all indebtedness and obligations owed to Plaintiff by ASF. *Id.*, ¶¶ 10, 14. The Guaranty Agreements provide "[t]his Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. The parties to this Guaranty are jointly and severally obligated together with all other parties obligated for the Guaranteed Obligations." *Id.*, ¶ 15. The Guaranty also provided that the Guarantors agreed to pay reasonable expenses to collect on the obligations. *Id.*, ¶ 16.

ASF and Wachovia also entered into an interest rate swap transaction whereby ASF paid a fixed rate of interest subject to the terms and conditions of the swap. *Id.*, ¶ 10. This

agreement was memorialized in an ISDA Master Agreement, dated October 5, 2006. *Id.*, ¶ 19. It was also evidenced by a Swap Transaction Confirmation dated October 20, 2006, and amended on October 25, 2006. *Id.*, ¶¶ 20, 21.

Under the terms of the Swap Agreement, ASF was required to make monthly payments to Wachovia. *Id.*, ¶ 23. Under the terms of the ISDA Master Agreement, ASF agreed that a default under the Loan Documents would constitute an "Event of Default" under the Swap Agreement. *Id.*, ¶ 24. A failure to make scheduled payments would also constitute an "Event of Default." *Id.* Finally, ASF agreed that if it was a Defaulting Party under the ISDA Master Agreement, it would indemnify Wachovia for reasonable expenses, including the costs of collection. *Id.*, ¶ 26.

Wachovia alleges that ASF defaulted under the terms of the Note by failing to pay the principal and interest due on October 20, 2009. *Id.*, ¶ 27. On November 24, 2009, counsel for Plaintiff notified ASF, Aderibigbe, Acquah, and Obiorah that ASF was in default and that as a result of the default, the entire amount due under the Note was accelerated and due immediately, and that Plaintiff demanded payment as of that date. *Id.*, ¶ 28. This notice also addressed Plaintiff's rights to collect attorney's fees. *Id.*

**B.  Contentions**

Plaintiff argues that Defendants' counterclaim should be dismissed because judicial precedent establishes that the language used in the contracts between the parties provides

3

that the secured creditor's remedies are cumulative and can be pursued concurrently or successively.

Defendants respond that the Loan Documents are part of a single transaction creating the contractual relationship whereby Plaintiff agreed to conduct a foreclosure sale on the real property collateral before proceeding for a monetary claim on the amounts allegedly owed under the Promissory Note. Defendants further aver that the personal guaranties were signed by the individual defendants for the purpose of addressing any deficiency that might be left after a foreclosure on the real property collateral.

## II.   Discussion

The Promissory Note contains the following provisions:

> **DEFAULT**.  If any of the following occur, a default ("Default") under this note shall exist: Nonpayment; Nonperformance.  The failure of timely payments or performance of the Obligations or Default under this Note or any other loan documents.

Note, at 3.

> **REMEDIES UPON DEFAULT**. *If a Default occurs* under this Note or any Loan Documents, *Bank may at any time, take the following actions*: **Bank Lien**.  Foreclose its security interest or lien against Borrower's deposit accounts and investment property without notice.  **Acceleration Upon Default**.  Accelerate the maturity of this Note and, at Bank's option, any or all other Obligations . . . ***Cumulative.  Exercise any rights and remedies as provided under the Note and other Loan Documents, or as provided by law or equity***.

*Id.*

4

> **WAIVER AND AMENDMENTS. . . .** *Neither the failure nor any delay on the part of the Bank in exercising any right, power or remedy under this Note and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or exercise of any other right, power or remedy.*

*Id.* at 4.

The Guaranty Agreements contain similar provisions:

> **DEFAULT.** If any of the following occur, a default ("Default") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guarantied Obligations or a default under any Loan Documents.

*See* Guaranty Agreements, at 3.

> If Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice . . . and, *Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity*.

*Id.*

> **WAIVERS AND ACKNOWLEDGEMENTS**. *Guarantor waives and releases the following rights, demands, and defenses Guarantor may have* with respect to Bank . . . and collection of the Guaranteed Obligations: (a) *promptness and diligence* in collection of any of the Guaranteed obligations from Borrower or any other person liable thereon, and *in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations*; (b) *any law or statute that requires that Bank* . . . make demand upon, assert claims against, or collect from Borrower or other persons or entities, *foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations*.

*Id.* at 2.

AO 72A
(Rev.8/82)

> **MISCELLANEOUS.** . . . **Amendments, Waivers and Remedies.** . . . *Neither the failure . . . of the Bank . . . in exercising any right, power or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively*. . . .

*Id.* at 5.

The Swap Agreement provides:

> (d) **Remedies Cumulative**. Except as provided in this Agreement, *the rights, powers, remedies and privileges provided in this Agreement are cumulative and not exclusive of any rights, powers, remedies and privileges provided by law*.
>
> (f) **No Waiver of Rights**. A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and *a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege*.

*See* Swap Agreement, § 8(d), (f).

Finally, the Security Deed provides:

> **Remedies of Bank on Default**. Failure of Grantor or any other person liable to timely pay or perform any of the Obligations is a default ("Default") under this Deed to Secure Debt. *Upon the occurrence of Default* the following remedies are available, without limitation, to the Bank: (i) *Bank may exercise any or all of Bank's remedies under this Deed to Secure Debt or other Loan Documents, including, without limitation, acceleration of the maturity of all payments and Obligations* . . . and (iv) . . . Bank may *elect* to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property.

6

> **Miscellaneous Provisions.** Grantor agrees to the following: (i) *All remedies available to the Bank with respect to this Deed to Secure Debt or available at law or in equity shall be cumulative and may be pursued concurrently or successively*. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default . . . (v) This Deed to Secure Debt may not be changed, terminated or modified orally or in any manner other than by an instrument in writing signed by the parties hereto . . ..

*See* Security Deed, at 10-11.

Plaintiff states that these provisions make it categorically clear that Plaintiff may choose which remedy to pursue in the event of default and Plaintiff does not first have to foreclose on the collateral. In their response to Plaintiff's motion to dismiss counterclaim, the individual Defendants make the inapposite argument that to the extent they are able to "satisfy their guaranty obligations, such abilities are strictly dependent upon Plaintiff's good faith efforts in liquidating any collateral securing the primary obligation for which Defendants are guarantors and applying any value realized from such sale towards the satisfaction of the primary obligation." *See* Response, at 2-3. "The probability that Defendants Obiorah, Aderibigbe, and Acquah are capable of satisfying their guaranty obligations to Plaintiff should there be a default under the primary obligation for which they are guarantors is substantially greater if Plaintiff satisfies such obligation in part through the collateral pledged by Defendants." *Id.* at 3.[1]

---

[1] The court notes that Defendants attach the affidavits of Obiorah, Aderibigbe, and Acquah to their response to Plaintiff's motion to dismiss. The court may not consider those documents on a motion to dismiss.

7

Plaintiff, however, has chosen to sue on the contractual documents as written. The fact that Defendants would prefer that Plaintiff first attempt foreclosure or that Defendants believe Plaintiff could secure the most monetary value by first pursuing foreclosure is irrelevant. The contractual agreements made between the parties did not give Defendants the option of directing the manner in which Plaintiff could collect under the agreements. As the court recounted in detail above, the agreements are clear in that Plaintiff may choose among many possible options in addressing default by Defendants. Thus, it is not possible for Plaintiff to have "breached" any of these agreements by not foreclosing on the collateral as the first attempt at collection.

Although Defendants argue in their brief that the loan documents were "essentially a single transaction whereby the parties agreed that, in the event of a default under the parties' agreement, the Plaintiff would foreclose on the real property collateral . . . prior to initiating any suit on the Promissory Note or Swap Agreement," *see* Response, at 4, that understanding is not contained in the agreements the parties signed.

It is, of course, no excuse that Defendants apparently intend to argue that they would never be able to satisfy the terms of the Guaranty Agreements they signed and simply assumed that Plaintiff would first seek to foreclose on the collateral. *See* Response, at 4 ("Because Defendants Obiorah, Aderibigbe, and Acquah are not capable of personally accounting for the total amount claimed by the Plaintiffs under the Promissory Note and

8

Swap Agreement, the Defendants entered into Guarantees under the assumption that upon a breach by ASF Enterprises, LLC, the value of the real property collateral under the Deed to Secure Debt, Assignment of Rents and Security Agreement would be applied to the amount owed prior to initiating any suit on the Guarantees.").

Nor does Georgia law require that Plaintiff first pursue foreclosure. In *Trust Investment & Development Co. v. First Georgia Bank*, the Supreme Court of Georgia rejected the argument that "allowing a judgment on a note secured by deed to secure debt is improper because it permits avoidance of the statutory requirement that judicial confirmation of a foreclosure sale be obtained prior to seeking a deficiency judgment." 238 Ga. 309, 309-10 (1977). Rather, the Court found that the "holder of a note who is also the grantee in a deed to secure the indebtedness of the note is not forced to exercise the power of sale in the deed. He may sue on the note or exercise the power of sale." *Id.* at 310. "When by agreement, the surety's obligation is conditioned upon the creditor's enforcement of security, the surety may be discharged by the creditor's failure to uphold the surety agreement. . . . However, when no such agreement is found, the courts have not conditioned the creditor's right of recovery from the surety on his first using any security he may have to satisfy or reduce his claim." *Id.* at 311-21. *See also Greenwald v. Columbus Bank & Trust Co.*, 228 Ga. App. 527 (1997); *Stewart v. Diehl*, 219 Ga. App. 821 (1996); *Taylor v. Thompson*, 158 Ga. App. 671 (1981).

9

Defendants argue that this clear precedent does not apply in "special circumstances" and the instant case is one of those circumstances because here the choice of remedies is "illusory." As an initial matter, the case Defendants cite for the proposition that there is a "special circumstances" exception to the choice of remedy rule, does not so hold. *See Jamison v. Button Gwinnett Savings Bank, FSB*, 204 Ga. App. 341, 342 (1992). In fact, *Jamison*, like *Trust Investment*, holds that a mortgagee could sue on the note or exercise the power of sale. The court then awarded sanctions against the borrower for making a frivolous appeal that the mortgagee had to foreclose first. *Id.* In any event, Defendants assert that the choice of remedies is illusory because any judgment that Plaintiff would receive based on a default of the Note would, itself, have to be satisfied by recourse to the collateral securing the Note. Therefore, Defendants contend, the alternative of suing on the Note is illusory and no remedy exists independent of the collateral subject to power of sale.

Defendants theorize that the only reason Plaintiff seeks to sue on the Note rather than foreclose on the collateral is to avoid the protections of the Confirmation Statute, O.C.G.A. § 44-14-161, which Defendants state they relied upon when executing the Agreements. Again, this argument avoids the fact that the parties negotiated for and reached terms in a contract. The contract did not state that Plaintiff must first pursue foreclosure so that Defendants would be entitled to the protections of the Confirmation Statute. In fact, the parties' agreements state the precise opposite – that Plaintiff would have its choice of

10

remedies in the event of a default. Defendants cannot ask the court to give them through judicial fiat what they did not bargain for in contractual negotiations.

Finally, Defendants aver that it goes against public policy to allow Plaintiff its choice of remedy. However, the fact that the purpose of the Confirmation Statute may or may not be for debtor relief says nothing about the rights of parties in arms-length negotiations to contract for specific remedies to a creditor. It has not escaped the court's attention that the only "law" Defendants cite to support their argument are in dissent or special concurrences. *See* Response, at 9-10. Notably, in *Taylor v. Thompson*, 158 Ga. App. 671 (1981), the court specifically rejected such a public policy argument in holding:

> For the benefit of bench and bar we restate the holding of this case as follows:
>
> When a creditor who holds a promissory note secured by a deed to secure debt containing a power of sale sues on the note and obtains a money judgment and thereafter elects to exercise the power of sale in the deed to secure debt, and the proceeds of such sale are not sufficient to satisfy the judgment, he is not required to comply with Code Ann. § 67-1503 [now § 44-14-161] before attempting to enforce further his judgment. We are not unmindful that this holding permits the avoidance of judicial confirmation of such foreclosure sale. However, as previously noted, the confirmation statute is in derogation of the common law and requires strict construction. When the creditor wishes to exercise a power of foreclosure prior to obtaining a judgment on the note and thereby save time and expense, he will be required to comply with the confirmation statute before instituting any action for a deficiency judgment. On the other hand, should a creditor elect to resort to the courts and obtain a judgment on the note prior to exercising the power of sale, he will not be required to have such sale confirmed before attempting further enforcement of the judgment. Even in the situation where the creditor is not required to obtain judicial confirmation of the sale, the debtor would still be able to have

11

the sale set aside by a court of equity should the circumstances as set forth in *Giordano v. Stubbs*, 228 Ga. 75, 79 (1971) be present.

*Id.* at 672.

For the foregoing reasons, the court GRANTS Wachovia Bank, N.A.'s motion to dismiss Defendants' counterclaims [10].

## III.   Conclusion

The court GRANTS Wachovia Bank, N.A.'s motion to dismiss Defendants' counterclaims [10].

**IT IS SO ORDERED** this 25th day of June 210.

  /s   J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)